1  Michael J. Kumeta, SBN 174866
   michaelkumeta@usa.net
2  4979 Clearview Way
   La Mesa, CA 91941
3  (619)-463-7811 (Office & Fax)

4  William G. Gillespie, SBN 137972
   swampfoxfire@sbcglobal.net
5  6960 West Lilac Road
   Bonsall, CA 92003
6  (760)-732-0702 (Office)

7  Attorneys for the Plaintiffs

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10  STEVE KLEIN, HOWARD PUTNAM, )   CASE NO. 8:08-CV-01369-CJC-MLG
    and GLEN BIONDI,                     )
11                                       )   PLAINTIFFS' **REPLY BRIEF**
              Plaintiffs,                )   IN SUPPORT OF MOTION FOR
12        vs.                            )   PRELIMINARY INJUNCTION
                                         )
13  CITY OF LAGUNA BEACH,                )   DATE:   August 31, 2009
    and DOES 1 through 10,               )   TIME:   1:30 p.m.
14                                       )   JUDGE:  Hon. Cormac J. Carney
              Defendants.                )   ROOM:   9B
15                                       )
                                         )
16                                       )
                                         )
17  _____ )

18  //////

19  //////

20  //////

21  //////

22  //////

23  //////

24  //////

25  //////

26  //////

27  //////

28  //////

## TABLE OF CONTENTS

Table of Authorities ..................................................................................... ii

Facts of the Case ......................................................................................... 1

Points and Authorities ................................................................................ 1

I.     While the City bears *every* burden of proof on the merits,
       it failed to meet these burdens .......................................................... 1

       A.     The City failed to offer *any* evidence to justify its
              prohibitions on amplified speech .............................................. 1

       B.     The Court, in denying the application for a TRO,
              had no factual support in the record to justify
              ordinances that ban low-level amplified speech ........................ 2

II.    Undisputed evidence establishes that the noise level in the
       commercial area of Laguna Beach is similar to the noise level
       in the City of San Diego's downtown commercial area ..................... 4

III.   The City's legal authority, regarding the evidence requirement,
       is inapplicable because it did not involve political speech or
       the time, place, and manner test ....................................................... 6

IV.    The City-sponsored music festivals, one of which occurs
       later-in-the-day in the same commercial area where plaintiffs
       wish to be, establish that the downtown commercial area is
       an appropriate area for amplified speech .......................................... 9

V.     The City's claim that the Court should deny a preliminary
       injunction because plaintiffs' amplified speech is *not* loud
       and disturbing is not supported by legal authority ............................ 9

VI.    The City failed to distinguish important cases pertaining
       to city halls and high schools .......................................................... 10

VII.   The primary purpose of a preliminary injunction is to
       prevent irreparable injury ............................................................... 10

Conclusion................................................................................................ 10

Table of Exhibits ..................................................................................... 11

i

# TABLE OF AUTHORITIES

FEDERAL CASES:

Bay Area Peace Navy v. United States, 914 F.2d 1224 (9th Cir. 1990)....................... 1

Burson v. Freeman, 504 U.S. 191, 112 S. Ct. 1846, 119 L. Ed. 2d 5 (1992) ............... 8

Chicago United. Ind. Ltd. v. Chicago, 445 F.3d 940 (7th Cir. 2006)........................ 10

Edenfield v. Fane, 507 U.S. 761, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993) . 1, 2, 6, 8

Elrod v. Burns, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ................... 10

Florida Bar v. Went For It, Inc., 515 U.S. 618, 115 S. Ct. 2371,
    132 L. Ed. 2d 541 (1995) .................................................................. 7

Gammoh v. City of La Habra, 2005 U.S. App. LEXIS 5242 (9th Cir. 2005).............. 7

G.K. LTD. Travel v. City of Lake Oswego, 436 F.3d 1064 (9th Cir. 2006)........... 7, 9

Grayned v. City of Rockford, 408 U.S. 104,
    92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) ......................................................... 10

Housing Works v. Kerik, 283 F.3d 471 (2nd Cir. 2002) ........................................... 10

Kuba v. 1-A Agricultural Ass'n, 387 F.3d 850 (9th Cir. 2004)........................... 1, 2, 8

Sammartano v. First Judicial District Court, 303 F.3d 959 (9th Cir. 2002) ................ 2

U.S. Labor Party v. Pomerleau, 557 F.2d 410 (4th Cir. 1977)................................... 8

FACTS OF THE CASE

Plaintiffs must address one point of fact. The City asserts that the "relief sought by Plaintiffs pertains only to the High School and City Hall." (Opp. Brief 6:18-19) The City's brief then fails to mention the challenge to the ban on amplified speech in busy commercial areas after 5:00 p.m. (Id., pages 1-9) Yet, plaintiffs expressly sought to engage in such conduct (Opening Brief [hereafter "OB"], Exhibit 4) and they spent much time developing this issue in their brief. (OB, pp. 10-13) The City's failure to address this issue is baffling.

POINTS AND AUTHORITIES

I. While the City bears *every* burden of proof on the merits, it failed to meet these burdens

Because the law restricts speech, the City bears every burden on the merits and, thus, must establish all three elements of the time, place, and manner test. Bay Area Peace Navy v. U.S., 914 F.2d 1224, 1227 (9th Cir. 1990). The failure to satisfy any element invalidates the law. Kuba v. 1-A Agricultural Ass'n, 387 F.3d 850, 858 (9th Cir. 2004).

As part of this burden, the City must produce evidence establishing the following: (1) that a problem (regarding low-level amplified speech) actually exists at the prohibited locations, (2) that the ordinances will materially cure this problem, and (3) that the City could not enact less-restrictive alternatives to cure the problem. (OB, pages 13-20)

A. The City failed to offer *any* evidence to justify its prohibitions on amplified speech

The City failed to satisfy its evidentiary burden of justifying the ordinance under the time, place, and manner test. This burden is not satisfied by mere speculation or conjecture; the City must offer credible evidence establishing that the problem it identifies is real and that the speech restriction will alleviate the problem to a material degree. Edenfield v. Fane, 507 U.S. 761, 770-72 (1993) (involving commercial speech); Kuba v. 1-A Agr. Ass'n, 387 F.3d 850, 859-60, 862 (9th Cir. 2004) (involving political speech). As a practical matter, if amplified speech really causes a problem, it is no great burden to require the City to offer some evidence of this harm, beyond its bald assertions of speculative harm.

1

In this case, City failed to offer <u>any</u> evidence – reports, statistical, or otherwise – to suggest that low-level amplified speech poses any threat of concrete harm at prohibited sites and times.  Without evidence of such concrete harm, the City cannot prove that amplified speech causes a problem or that a ban on such activity will further its goal.  The City simply offers conclusory articulations of governmental interests, without offering any evidence that addresses the real issue:  does low level amplified speech <u>really</u> cause a problem?

The City's arguments are based on simple conjecture about some problem that <u>might</u> occur.  The City offers no evidence that amplified speech that is no louder than ambient noise levels poses any real harm or that the City could not enact obvious, less-burdensome alternatives to reach its goal.  Instead, the City relies on mere speculation and conjecture.

Instead of producing evidence of harm, the City asks this Court to adopt a standard of obviousness or common sense.  (Opp. Brief 5:1-4)  The difficulty with this novel argument, however, is that the Supreme Court requires that the City offer some evidence establishing that the speech restriction curbs an <u>actual</u> harm.  <u>Edenfield</u>, 507 U.S. at 770-72.  Since <u>Edenfield</u>, the Ninth Circuit has affirmed that a pubic entity must offer evidence to support its justification for a restriction on political speech.  <u>Kuba v. 1-A Agr. Ass'n</u>, 387 F.3d 850, 859-60, 862 (9th Cir. 2004).  With regard to political speech, even in a <u>non-public</u> forum a city must still offer evidence of a real concrete harm.  <u>Sammartano v. First Jud. Dist. Ct.</u>, 303 F.3d 959, 967 (9th Cir. 2002).  An "undifferentiated fear or apprehension of [a problem] is not enough to overcome the right to freedom of expression."  <u>Id</u>. at 969.

In sum, the City offered no evidence that amplified speech poses a real harm or that it could not enact less restrictive alternatives.  Instead, it relies on speculation and conjecture.

<u>B. The Court, in denying the application for a TRO, had no factual support in the record to justify ordinances that ban low-level amplified speech</u>

In denying the TRO application, the Court made numerous presumptions without any supporting evidence in the record.  For example, the Court stated:  "What is clear is that use of amplification equipment in front of City Hall would disturb the workers inside the

building." (Order Denying TRO, 1-23-09, 10:10-11)  Yet, there is no evidence in the record to support such a finding.  The City must establish that a low level of amplified speech, which is no louder than ambient noise levels in the area, creates a problem at city hall.

Plaintiffs wish to use levels of sound that are twenty to thirty percent higher than their normal voices, perhaps equivalent to a man with a loud voice <u>without</u> amplification. (Decl. of Steve Klein, 7-31-09, 2:1-7)  The City did not present any evidence that use of amplified speech at such a low volume would cause a problem at city hall.  Nor did the City offer any evidence that establishes why the city hall deserves special protection, as opposed to all the other office buildings and retail establishments in the City.  In fact, the City's own Noise Element fails to list city hall as a noise-sensitive land use.  (*See* supra, 6:9-14)

Regarding the high school, the Court stated that "the presence of teenage drivers, pedestrians, skateboarders, and parents picking up children creates an already hazardous traffic situation that would only be complicated by disruptive noise."  (Order Denying TRO, 1-23-09, 9:15-18)  Again, the Court made two presumptive leaps, without any supporting evidence.  First, it simply assumed that plaintiffs' amplified speech is disruptive, when it is <u>no louder</u> than the ambient noise level at the high school (plaintiffs simply wish to compete with existing background noise).  (Decl. of Steve Klein, 7-31-09, 2:1-7)  Second, the Court simply assumed that a hazardous traffic situation exists at the school, without any evidence in the record to support this presumption.

The City is not free to rely on mere speculation or conjecture when speech rights are at stake.  The City must present scientific or statistical evidence, or even evidence of actual incidents, establishing that low-level amplified speech causes problems at the high school, at city hall, and in commercial areas between the hours of 5:00 p.m. and 6:00 p.m.

The following passage from the Court's "Order Denying a TRO" demonstrates the problems that occur when conclusions are reached without relying on a factual record:

> Laguna Beach is no bustling metropolis.  The closest thing Laguna Beach
> has to the din of the city is the sound of the Pacific lapping onto the sand,
> barely audible a half block away.  (Order Denying TRO, 1-23-09, 8:16-18)

In fact, the City is a noisy and bustling beach community that attracts large numbers of tourists and young people. The City is, in fact, the exact opposite of the serene caricature portrayed in that passage. The commercial area where the plaintiffs wish to use amplified speech borders the Coast Highway, a very busy highway. In fact, this is the noisiest area of the City. (*See* discussion in Section II) It is so congested with pedestrians and beachgoers that the City provides shuttle buses to the area, because of the chronic lack of parking. (Declaration of Steve Klein, 7-31-09, 4:13-15)

Klein often visited the beach area of the City as a youth and is familiar with the City. (Id. at 4:16-18) For decades, the City's beach area has attracted young people to the City. (Id.) In several recent visits to the City, Klein documented the incredible level of noise generated in the commercial area near the beach. (Id. at 4:1-28) Noise emanated from buses, service vehicles, garbage trucks, large transport trucks, horns, sirens, and the voices of groups of dozens of people crossing the busy intersections. (Id. at 4:6-15)

In summary, the commercial district of the City is a noisy tourist area that has a busy highway running through it. In the next section, plaintiffs heft the weighty burden ignored by the City – and present real, objective evidence establishing that noise levels in downtown Laguna Beach are comparable to the busy downtown area of the City of San Diego.

II. Undisputed evidence establishes that the noise level in the commercial area of Laguna Beach is similar to the noise level in the City of San Diego's downtown commercial area

Plaintiffs wish to use sound amplification on public sidewalks in a busy commercial area of the City from 5:00 p.m. to 6:00 p.m. (Exhibit 4) The City's General Plan states that "[t]he noise environment in Laguna Beach varies from the busy high density corridor along Coast Highway to the lower density residential communities on the hillsides." (Exhibit 15, City of Laguna Beach, General Plan, Noise Element, adopted 3-15-05, page 32, par. 1)

"The predominant noise source is Coast Highway. Exhibit 4 shows this very clearly; the sites nearest Coast Highway are the loudest sited in the City." (Id., p. 11, par. 2) "The most common sources of noise in Laguna Beach are transportation related noise sources.

4

These include automobiles, trucks, motorcycles, and aircraft." (Id., page 23, par. 3)  This is what Klein experienced when he visited the City.  (Decl. of Steve Klein, 7-31-09, 4:1-15)

The one commercial site on South Coast Highway, listed in Exhibit 4 (site 9), had an average sound level of 70 dBA with noise spikes up to 88 dBA at 11:15 p.m.; the two residential areas of South Coast Highway, listed in Exhibit 4 (sites 2 and 6), had average sound levels of 72 dBA with noise spikes up to 84 dBA at 7:30 a.m. and 89 dBA at 8:20 a.m., respectively.  (Exhibit 15, General Plan, Noise Element, adopted 3-15-05, Exhibit 4, page 13, sites 2, 6, and 9)  Each noise spike of 10 dBA is twice as loud as the ambient noise level; each noise spike of 20 dBA is four times as loud.  (Id., page 6, par. 2)

By comparison, the highest average sound level in downtown City of San Diego for traffic noise was 70.1 dBA.[1]  (Exhibit 16, City of San Diego, Downtown Community Plan, EIR, Noise Element, adopted March 2006, page 5.7-5, Table 5.7-2)  So, noise levels in the commercial area of Laguna Beach are comparable to noise levels in downtown San Diego. See id. This is logical because, while downtown San Diego has Interstate 5 at its boundaries, Laguna Beach has the noisy Coast Highway running through the middle of its commercial district – without the sound barriers that large cities erect at the edge of interstate highways.

"It is important to note that the City of Laguna Beach is essentially built out, and thus experiences a set of noise problems unique to a mature city."  (Exhibit 15, City of Laguna Beach, General Plan, Noise Element, adopted 3-15-05, page 29, par. 2)  Thus, the City itself admits that it has noise levels similar to fully-developed urban areas.

The City of Laguna Beach's Noise Element also mentions other significant sources of noise, many of which occur in the evening or late at night:

> Late night activity associated with restaurants and bars is also a concern (noise measurement locations 9 and 20 were located outside very active restaurants and bars).  Also, during the summer months the three local art festivals are the source of some noise.  The Pageant of the Masters includes

---

[1] Like the City of Laguna Beach, "[e]xisting noise levels around the Centre City/downtown area [of San Diego] derive mainly from transportation-related activities, particularly from on-road traffic."  (Exhibit 17, Noise Impact Analysis, Downtown Community Plan, City of San Diego, 7-19-05, page 4, par. 3)

orchestra music and amplified public address system and the Sawdust
Festival includes live music.  Note also that the festival grounds are used
for special events at various times of the year and these events may include
live music or amplified recorded music.  The City of Laguna Beach also
sponsors a "concert in park" series during the summer at Bluebird Park.  It
should also be noted that on weekends a small number of the local restaurants
currently attract motorcycle enthusiasts to the City.  (Id., page 24, par. 3)

The Noise Element lists noise-sensitive land uses as "three public, several private
schools, day care centers, retirement homes and a hospital."  (Id., page 24, par. 4)  But the
City failed to list city hall as a sensitive land use.  It is highly doubtful that the experts who
drafted the City's General Plan would fail to include the very building in which they work,
if they believed that a city hall is traditionally, or actually, a sensitive land use.  This utterly
destroys the City's claim that the city hall is somehow different from other office buildings.

In summary, "[t]he expectation of quiet is considerably less in downtown areas than
it is in residential suburbs or semi-rural areas."  (Exhibit 16, City of San Diego, EIR, Noise
Element, adopted March 2006, page 5.7-9, par. 1) (emphasis added)  It is axiomatic that low
level amplified speech is entirely appropriate in noisy commercial areas, at city hall (which
is located in the commercial area), and during peak noise time after school ends.

III. The City's legal authority, regarding the evidence requirement, is inapplicable because it
did not involve political speech or the time, place, and manner test

The City claims that plaintiffs cited no case law establishing a *per se* rule that it must
present evidence that a problem exists before banning speech.  (Opp. Brief 4:20-21)  In fact,
plaintiffs did cite such cases.  A city's burden to produce evidence is not satisfied by mere
speculation or conjecture; it must offer evidence establishing that the problem it identifies is
real and that its speech restriction will alleviate that problem to a material degree.  Edenfield
v. Fane, 507 U.S. 761, 770-71 (1993).  How much more clear could this rule be?

1
2
3
4

The cases cited by the City pertain to a <u>very narrow exception</u> to this rule that applies <u>only</u> to less-protected forms of commercial speech (e.g., billboards and adult entertainment) where previous litigants presented so much evidence of the deleterious City-wide secondary effects of such commercial speech that an actual problem is established <u>as a matter of law</u>.

5
6
7
8
9
10
11
12

In fact, City is so desperate to cite supporting authority, where none exists, that only one case cited by it involves political speech in a traditional public forum using the time, place, and manner test.  And that case does not stand for the proposition that no evidence is required.  A chart summarizes the City's cases for the Court's convenience.  (Declaration of Michael J. Kumeta, 8-24-09, 2:14-28)  The cases involved commercial speech, non-public fora, or a different level of judicial scrutiny.  (<u>Id</u>.)  Commercial speech cases are useful for analyzing political speech cases only to show the <u>minimum</u> level of protection afforded to <u>any</u> type of speech; otherwise, they are not useful as precedent in political speech cases.

13
14
15
16
17
18
19
20

Significantly, the commercial speech cases cited by the City actually support the argument that <u>some</u> level of evidence is required.  For example, in one case cited by the City, the Supreme Court held there was no requirement "that <u>empirical data</u> come to us accompanied by a <u>surfeit</u> of background information." <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618, 628 (1995) (emphasis added).  The Court then stated that "[n]othing in *Edenfield*, a case in which the State offered *no* evidence or anecdotes in support of its restriction, requires more." <u>Id</u>. (emphasis in original).  As a result, even in commercial speech cases, the state must present <u>some</u> evidence that a particular form of speech is creating a problem.

21
22
23
24
25
26
27
28

In another commercial speech case, cited by the City for the proposition that it need not produce evidence, the Ninth Circuit found that the city "produced <u>strong evidence</u> of the need for sign restrictions . . . ." <u>G.K. LTD. Travel v. City of Lake Oswego</u>, 436 F.3d 1064, 1073 (9th Cir. 2006) (emphasis added).  In another commercial speech case cited by City, the Court found that the "pre-enactment record in this case is substantial" and included "seventeen studies on secondary effects of adult businesses" and numerous reports on AIDS and other sexually transmitted diseases.  <u>Gammoh v. City of La Habra</u>, 2005 U.S. App. LEXIS 5242, 26 (9th Cir. 2005).  Even the cases cited by City support a need for evidence.

The City refers to *dicta* in a case where the Supreme Court stated that a "long history, a substantial consensus, <u>and</u> simple common sense show that some restricted zone around polling places is necessary to protect that fundamental right." <u>Burson v. Freeman</u>, 504 U.S. 191, 211 (1992) (emphasis added).  In fact, the Court found "<u>ample evidence</u> that political candidates have used campaign workers to commit voter intimidation or electoral fraud." <u>Id</u>. at 207.  This evidence included facts in the Congressional records going back over 100 years.  <u>Id</u>. at 201 n.7.  The "long history" and "substantial consensus" referred to the "ample evidence" of abuse at polling places.  The Court's use of the conjunctive "and" establishes that even if the Court considers common sense as a factor, it still requires some evidence that a real problem exists.  Nothing in the decision stands for the proposition that common sense, standing alone, can ever be a substitute for evidence in a political speech case.

The Supreme Court requires that the government offer evidence establishing that the restriction on speech curbs an actual harm with a basis in fact.  <u>Edenfield</u>, 507 U.S. at 770-72; <u>Kuba</u>, 387 F.3d at 859-60.  Even if common sense were the legal standard, it would dictate that amplified speech that is <u>no louder</u> than ambient noise levels does not cause a problem.  *E.g.*, <u>U.S. Labor Party v. Pomerleau</u>, 557 F.2d 410, 413 (4th Cir. 1977).

For certain activities, the City can rely on evidence from other cities.  For example, the City may enact a 75 dBL noise level restriction for commercial areas based on evidence from other cities that such a cap is reasonable, because it is based on objective national standards for similar areas.  But to enact a <u>total ban</u> on amplified speech, even if it is no louder than ambient noise levels, requires evidence establishing that <u>low level</u> amplified speech creates a problem different than other equally loud noises.  Otherwise, citizens have the right to use amplified speech that does not exceed ambient noise levels.  (See discussion of cases, OB, 11:1-13)  But the City failed to discuss this well-established rule.

The City also failed to discuss clear precedent holding that it must offer evidence to support its justification for a restriction on <u>political</u> speech.  <u>Kuba v. 1-A Agr. Ass'n</u>, 387 F.3d 850, 859-60, 862 (9th Cir. 2004).  In summary, in political speech cases there *is* a per se rule that the City must present evidence that establishes that a <u>real</u> problem actually exists.

8

IV. The City-sponsored music festivals, one of which occurs later-in-the-day in the same commercial area where plaintiffs wish to be, establish that the downtown commercial area is an appropriate area for amplified speech

The City argues that allowing music festivals in commercial areas after 5:00 p.m., despite the City-wide ban on all amplified sound after 5:00 p.m., does not result in content-based discrimination.[2]  (Opp. Brief, pages 6-7)  Regarding content-based laws, the Ninth Circuit "questioned the constitutionality of a wholesale exemption for government speech," but noted that such an exemption does not exist, as a matter of law, if a public entity must still comply with the substantive provisions of its law (e.g., the number and characteristics of their signs). G.K. Ltd. Travel, 436 F.3d at 1077 n.11.  That is not the case here, where private performers in City-sponsored music festivals may blissfully ignore a total, City-wide ban on sound amplification after 5:00 p.m.  The City cannot discriminate against amplified political speech by allowing non-protected amplified speech (i.e., festival music).

Yet, content-discrimination was not the main thrust of the plaintiffs' argument in that particular passage.  (OB 11:14-25)  They assert that, regardless of whether these exceptions result in content-based discrimination, City-sponsored music festivals constitute definitive evidence of the high level of ambient noise, which is far louder than plaintiffs' low-volume amplified speech.  This evidence establishes that amplified speech is entirely appropriate in the commercial area of the City after 5:00 p.m.  City failed to refute this powerful evidence.


V. The City's claim that the Court should deny a preliminary injunction because plaintiffs' amplified speech is _not_ loud and disturbing is not supported by legal authority

The City bizarrely argues that because plaintiffs do not wish to use amplified speech at a loud nuisance level, but only loud enough to compete with ambient noise levels, this somehow undercuts their argument.  (Opp. Brief 1:20-25; 8:27-9:2)  In fact, use of low level sound amplification demonstrates the reasonableness of their position.  Perhaps twenty

---

[2] Plaintiffs conceded that the law is content-neutral on its face (OB 4:7), but they also argued that it was content-based as-applied to the plaintiffs because the City applies an exception to the ordinance for City-sponsored music events by private performers (OB 11:23-25).

percent of all men have voices loud enough to compete with loud ambient noise levels, but even those few will grow hoarse, and silent, after a few minutes.  Plaintiffs have the right to use amplified speech if it does not exceed ambient noise levels.  (*See* discussion of cases, OB, 11:1-13)  The City ignored these cases and failed to refute this well-established rule.

VI. The City failed to distinguish important cases pertaining to city halls and high schools

City hall is no different than other office buildings.  The Court cited a case involving city hall in New York City, a unique building in the nation's largest city, equivalent to the U.S. Capital in attracting large numbers of activists.  Housing Works v. Kerik, 283 F.3d 471, 473 (2nd Cir. 2002). Moreover, the case involved the central plaza of city hall – and not public sidewalks around city hall.  Id. at 474.  Finally, no court outside the Second Circuit, which is far less protective of speech rights than the Ninth Circuit, has ever cited this case.

A Supreme Court decision upheld an anti-noise law applying to property adjacent to a school, precisely because it did not apply to "expressive activity before or after the school session, while the student/faculty 'audience' enters and leaves the school." Grayned v. City of Rockford, 408 U.S. 104, 120 (1972) (emphasis added).  It is this precise time when the plaintiffs wish to speak, but City cynically chose to ban amplified speech at this exact time.

VII. The primary purpose of a preliminary injunction is to prevent irreparable injury

City claims the purpose of injunctive relief is to preserve the status quo.  (Opp. Brief 3:15-18)  Yet, its purpose is to prevent irreparable harm; whether the status quo is preserved is "neither here nor there."  Chicago United. Ind. Ltd. v. Chicago, 445 F.3d 940, 944 (7th Cir. 2006).  And the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U. S. 347, 373 (1976).

DATED:  August 24, 2009              Respectfully Submitted,

By:   /s /  Michael J. Kumeta

Michael J. Kumeta, Attorney for Plaintiffs

10

## TABLE OF EXHIBITS

15. City of Laguna Beach, General Plan, Noise Element, adopted 3-15-05.

16. City of San Diego, Downtown Community Plan, EIR, Noise Element,
     adopted March 2006.

17. Noise Impact Analysis, Downtown Community Plan, City of San Diego, dated 7-19-05.